IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| JOHN A. SCOTT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 2:07cv400-CSC |
| | ) (WO) |
| COMMISSIONER OF | ) |
| SOCIAL SECURITY, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

**I. Introduction**

The plaintiff applied for disability insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. § 401 et seq., and supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381 et seq., alleging that he was unable to work because of a disability. His application was denied at the initial administrative level. The plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ"). Following the hearing, the ALJ also denied the claim. The Appeals Council rejected a subsequent request for review. The ALJ's decision consequently became the final decision of the Commissioner of Social Security (Commissioner).[1] *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The case is now before the court for review pursuant to 42 U.S.C. §§ 405 (g) and 1631(c)(3). The parties have consented to the United States

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

Magistrate Judge conducting all proceedings in this case and ordering the entry of final judgment, pursuant to 28 U.S.C. § 636(c)(1) and M.D. Ala. LR 73.1. Based on the court's review of the record in this case and the briefs of the parties, the court concludes that the decision of the Commissioner should be affirmed.

## II. Standard of Review

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . .

To make this determination,[2] the Commissioner employs a five-step, sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920.

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

---

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

[3] *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986) is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits. Cases arising under Title II are appropriately

The standard of review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A reviewing court may not look only to those parts of the record which supports the decision of the ALJ but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III. The Issues

**A. Introduction**. Plaintiff John Scott ("Scott") was 47 years old at the alleged date of onset and 50 years old at the time of the hearing before the ALJ. (R. 19). Scott has the equivalent of a twelfth grade education.[4] (*Id.*). His prior work experience includes work as a stock clerk and a grinder/operator. (R. 19). Following the hearing, the ALJ concluded that

---

cited as authority in Title XVI cases. *See e.g. Ware v. Schweiker,* 651 F.2d 408 (5th Cir. 1981) (Unit A).

[4] The record demonstrates that Scott received his General Equivalency Degree ("GED") on September 28, 1984. (R. 61).

3

the plaintiff has severe impairments of "lumbar radiculopathy and hypertension." (R. 16). The ALJ concluded that the plaintiff was unable to perform his past relevant work, but, using the Medical-Vocational Guidelines, 20 C.F.R. Pt. 404, Subpt. P., App. 2, as a framework and relying on the testimony of a vocational expert, he also concluded that there were significant number of jobs in the national economy that the plaintiff could perform. (R. 19-20). Accordingly, the ALJ concluded that the plaintiff was not disabled. (R. 20).

    **B. Plaintiff's Claims**. As stated by the plaintiff, he presents the following two issues for the Court's review:

    I. The Commissioner failed to properly apply the Social Security Grid rules.

    II. The Commissioner failed to properly consider the Eleventh Circuit's three part pain standard.

(Pl's Br. at 3).

## IV. Discussion

    A disability claimant bears the initial burden of demonstrating an inability to return to his past work. *Lucas v. Sullivan*, 918 F.2d 1567 (11th Cir. 1990). In determining whether the claimant has satisfied this burden, the Commissioner is guided by four factors: (1) objective medical facts or clinical findings, (2) diagnoses of examining physicians, (3) subjective evidence of pain and disability, e.g., the testimony of the claimant and his family or friends, and (4) the claimant's age, education, and work history. *Tieniber v. Heckler*, 720 F.2d 1251 (11th Cir. 1983). The court must scrutinize the record in its entirety to determine the reasonableness of the ALJ's decision. *See Walker,* 826 F.2d at 999. The ALJ must conscientiously probe into, inquire of and explore all relevant facts to elicit both favorable

4

and unfavorable facts for review. *Cowart v. Schweiker,* 662 F.2d 731, 735-36 (11th Cir. 1981). The ALJ must also state, with sufficient specificity, the reasons for his decision referencing the plaintiff's impairments. Within this analytical framework, the court addresses the plaintiff's specific claims.

**1. Whether the ALJ failed to properly apply the Medical Vocational Guidelines (Grids).** Scott contends that the ALJ improperly applied the Medical-Vocational Guidelines, 20 C.F.R. Pt. 404, Subpt. P., App. 2, ("Grids") because "pursuant to Grid Rule 201.14 as Plaintiff was 50 years old (closely approaching advanced age), with a high school equivalent education, and past work identified as semiskilled and skills not transferable," he is disabled. According to Scott, the ALJ improperly concluded that he could perform light work when, under the guidelines, the work as described by the ALJ was in actuality sedentary work. (Pl's Br. at 5). "In the present case, the ALJ has described sedentary work in her RFC, but in order to avoid paying this case, has simply renamed it light work." (Pl's Br. at 5).

Scott was 47 years old at the alleged date of onset and 50 years old at the time of the hearing before the ALJ. (R. 19). Consequently, the ALJ properly concluded that Scott "was a younger individual on his alleged onset date and is now a person closely approaching advanced age." (R. 21). However, the ALJ did not conclude that Scott was not disabled based solely upon the grids because, of course, exclusive reliance on the grids is appropriate only when a claimant has no non-exertional impairments that significantly limit his basic work activities. *Foote v. Chater*, 67 F.3d 1553 (11th Cir. 1995); *Sryock v. Heckler*, 764 F.2d 834 (11th Cir. 1985).

5

> [I]n determining residual functional capacity only exertional limitations are considered . . . If a claimant has nonexertional impairments that significantly limit the ability to do basic work activities . . . then the grid regulations do not apply. . . . However, when both exertional and nonexertional work impairments exist the grids may still be applicable. [N]on–exertional limitations can cause the grid to be inapplicable only when the limitations are severe enough to prevent a wide range of gainful employment at a designated level. Therefore, when both exertional and nonexertional limitations affect a claimant's ability to work, the ALJ should make a specific finding as to whether the nonexertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations. Courts will review this determination only to determine whether it is supported by substantial evidence.

*Sryock*, 764 F.2d at 836 (internal citations omitted).

The crux of Scott's issue concerns the ALJ's determination that he could perform light work limited to a "sit/stand option or allow him to sit for the majority of the time." (Pl's Br. at p. 5). The Social Security Administration has developed a sequential evaluation process for determining if a plaintiff is disabled. 20 C.F.R. §§ 404.1520 and 416.920. It is the plaintiff's responsibility to demonstrate an inability to return to his past relevant work. *Lucas, supra.* After a plaintiff has shown that he cannot perform his past relevant work, the burden then falls upon the Commissioner to show that there are other jobs in the national economy that the plaintiff can perform.

The ALJ determined by expert vocational testimony that there were other jobs that the plaintiff could perform in Alabama and the national economy within the sit/stand limitation of his impairments. (R. 19-20, 180-81). The vocational expert described these jobs as ones in which the employee could alternate between standing and sitting. (R. 180).

> Q:   Okay. Under 3F, would he be able to do any work?
> A:   Oh, sure. The sitting was okay. So jobs where you'd walk as much as

6

>    six hours and have a chance to alternate with some sitting would be fine. One of the things that occurred to me was – since he's got his GED that some kind of lighter work would make more sense. Something like working in a convenience store as a cashier would make a lot of sense to me, to look for a job in that area. Let me see I'll pull out a convenience store cashier and see what the numbers are. It's an entry-level, light occupation. There's 75,000 cashiers, of all types, in the State of Alabama. 3.4 million people do that nationwide. And that's a job you could use a stool to sit on, if you wanted to. So you could alternate that. You didn't have to stand over six hours. Then I would tend to look in jobs that are light or sedentary or offer the sit, stand option kinds of things. For example, there's a number of small parts assemblers in the state that put everything from seatbelts together to water meter parts. They're unskilled jobs. They're light occupations. There's over 17,000 people that do that in the state. And 1.1 million people do it nationwide.
> Q:  Okay.
> A:  Then maybe another possibility would be a – I know it may sound odd to him, but would certainly fit all the restrictions without any problem, would be a sewing machine operator. It's a light job, but you sit all day long. And, according to that Exhibit, sitting was not a problem. And there's over – that's an entry level, light job. There's over 30,000 sewing machine operators in the state. And, let me see, there's 370,000 people that do that job nationwide. . . .

(R. 180-81).

Thus, the ALJ met any responsibility regarding the allowable frequency of sitting or standing on these jobs.

In addition, the ALJ considered the plaintiff's daily activities to determine the plaintiff's residual functional capacity to perform work. The ALJ relied on the plaintiff's own testimony regarding his abilities as well as the testimony of the vocational expert to conclude that Scott could perform light work with a "sit/down option or allow him to sit a good deal of the time." (R. 19). Scott testified that he "usually could stand about four hours . . . with a little bit of toleration." (R. 167). He thought "[i]f it's a comfortable chair, [he]

7

could sit in a chair for about four hours." (*Id.*) The ALJ also considered Scott's daily activities when determining his residual functional capacity.

> During his alleged period of disability, the claimant has functioned independently. He is able to care for his personal needs without assistance. He prepares meals, performs household chores, cuts the grass, shops, loads and unloads groceries, and drives a car. He uses no assistive device for ambulation or balance (Exhibits B-4E).

(R. 18).

A review of the ALJ's decision demonstrates that the ALJ conducted a thorough analysis of the testimony and considered all of the evidence in reaching his decision. This court must accept the factual findings of the Commissioner if they are supported by substantial evidence and based upon the proper legal standards. *Bridges v. Bowen*, 815 F.2d 622 (11th Cir. 1987)

The plaintiff also argues that the ALJ should have accepted his testimony regarding his pain which he says prevents him from working. The court now turns to this issue.

**2. Whether the ALJ failed to properly consider the Eleventh Circuit three-part pain standard**. Scott contends that his pain is so severe he cannot work, but, as explained below, the ALJ did not credit this testimony. Thus, the plaintiff argues that the ALJ failed to properly discredit his pain testimony. "Subjective pain testimony supported by objective medical evidence of a condition that can reasonably be expected to produce the symptoms of which the plaintiff complains is *itself* sufficient to sustain a finding of disability." *Hale v. Bowen*, 831 F.2d 1007 (11th Cir. 1987). The Eleventh Circuit has established a three-part test that applies when a claimant attempts to establish disability through his own testimony

of pain or other subjective symptoms. *Landry,* 782 F.2d at 1553; *see also Holt*, 921 F.2d at 1223. This standard requires evidence of an underlying medical condition *and either* (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition *or* (2) an objectively determined medical condition of such severity that it can reasonably be expected to give rise to the alleged pain. *Landry,* 782 F. 2d at 1553. In this circuit, the law is clear. The Commissioner must consider a claimant's subjective testimony of pain if he finds evidence of an underlying medical condition and the objectively determined medical condition is of a severity that can reasonably be expected to give rise to the alleged pain. *Mason v. Bowen*, 791 F.2d 1460, 1462 (11th Cir. 1986); *Landry*, 782 F.2d at 1553. Thus, if the Commissioner fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, the Commissioner has accepted the testimony as true as a matter of law. This standard requires that the articulated reasons must be supported by substantial reasons. If there is no such support then the testimony must be accepted as true. *Hale*, 831 F.2d at 1012.

At the administrative hearing, the plaintiff testified that he suffers from mid to lower back pain and that this pain prevents him from working. (R. 165). Although he quit his last job due to the pain in his feet, Scott testified that he has back and leg pain "all the time." (R. 164, 166). He further testified that the pain in his legs "at the worst, it's about an 11, " "at the least, [it's] . . . about five," and on average, "it's about eight." (R. 166-67). According to Scott, he has experienced "the pain at this level since 1989." (R. 172-73). However, he takes no pain medication. He has recently been prescribed an anti-inflammatory. (R. 171).

9

In addition to taking no pain medication, he has had no treatment for his back. (R. 171-72). Scott testified that he did not know he had a back problem until he had an MRI. (R. 174). He also testified that as the result of a nerve conduction study, "they didn't find any neuropathy, but they found other things that led back to my back." (R. 166). He testified that he thought he could stand for approximately four (4) hours "with a little bit of toleration," stand comfortably with no pain for about an hour, and sit "in a comfortable chair" for approximately four (4) hours. (R. 167).

Scott applied for disability on April 30, 2004, alleging he was disabled due to hypertension and bilateral foot pain. (R. 23). He alleged that he became disabled on October 20, 2002, (R. 38), but he last worked on January 7, 2004. (R. 57). On his application for disability, Scott indicated that he suffered from high blood pressure and peripheral neuropathy, and he stopped working because "his feet and legs are swollen up and he is in constant pain, with his high blood pressure he can't go out in the hot sun." (R. 56-57).

The ALJ discredited the plaintiff's testimony of disabling pain and functional restrictions as "disproportionate to the objective medical evidence." (R. 16). If this were the extent of the ALJ's credibility analysis, the plaintiff might be entitled to some relief. However, the ALJ continued his analysis.

> The objective evidence does not support claimant's allegations of constant pain at a moderate level since 1989. The treatment record, generated from August 1998, forward, discloses few, if any, complaints of back, leg, or foot pain. Hirenkumar Jani, M.D., treated the claimant from August 1998 to January 2000 (Exhibit B-1F). His progress notes indicate that most doctor visits were made for blood pressure check ups or refills of blood pressure medications. On one occasion, on August 20, 1998, the claimant reported having pain but this was related to his neck and a headache. He was taking no

10

medications on that date.

Ritky C. Dy, M.D., has also provided medical care (Exhibits B-2F, B-4F, B-7F). Over a five-year period, from August 2000 to January 2006, the claimant made approximately ten doctor visits to Dr. Dy's office. These were primarily for check-ups, refills of blood pressure medication and/or sinus problems. Reviews of his systems show that musculoskeletal or neurological complaints were usually not made. The claimant voiced one complaint of neck stiffness on August 24, 2001. He occasionally complained of a mild headache (H/A) or feeling lightheaded when having sinus problems. It appears that he first complained of back and/or leg problems in August or September of 2004. Such complaint was made five or six months after the disability filing date in this case. An electromylogram, conducted in August 2004, demonstrated findings consistent with left L3, 4, and 5 radiculopathy, but no opinion was given as to its severity. There is no evidence for neuropathy in the lower extremities. Subsequent magnetic resonance imaging, in September 2004, revealed degenerative endplate and disk changes with diffuse bulging at L5-S1 with "minimal" thecal sac effacement. There was no significant compression and no significant spinal stenosis or neural forminal narrowing. Such findings suggest that, in the absence of significant spinal cord compression, the severity of the claimant's symptoms is likely mild. This level of severity is further supported by clinical findings. During physical examinations, doctors have observed the claimant to have positive straight leg raising, more so on the left side, consistent with radiculopathy. Other findings, however, were unremarkable. The claimant has had full range of motion of this back (i.e, 90 degrees flexion, 30 degrees lateral flexion and extension), normal (5/5) motor strength in his legs, normal deep tendon reflexes, no localized tenderness, no muscle spasm, and normal sensation for vibration, position and touch in the lower extremities. He has been able to walk on his heels and toes.

While claimant has testified to having excruciating pain (i.e., 11 on pain scale) for the past fifteen years, the record simply does not support his testimony. Both treatment notes and disability forms indicate that he has not taken prescription pain medication on a regular basis (See Exhibits B-3E, page 5; B-4E, page 6; and B-8E, page 4). He stated that his doctor had recently prescribed an anti-inflammatory drug, but, this was not disclosed on his list of medications, completed just thirteen days before his disability hearing date (See Exhibit B-9E). I do note that he lists children's aspirin. This, however, is an over-the-counter pain reliever apparently taken for high blood pressure (See Exhibit B-4E, page 6). During his alleged period of disability, the claimant has functioned independently. He is able to care for his personal needs without assistance. He prepares meals, performs household chores, cuts

  the grass, shops, loads and unloads groceries, and drives a car. He uses no assistive device for ambulation or balance (Exhibits B-4E).

(R. 17-18) (footnotes omitted).

  The ALJ has discretion to discredit a plaintiff's subjective complaints as long as he provides "explicit and adequate reasons for his decision." *Holt,* 921 F.2d at 1223. The ALJ's reasons for discrediting the plaintiff's testimony of pain and disability were both clearly articulated and supported by substantial evidence. *Id.* Relying on the treatment records, objective evidence, and Scott's own testimony, the ALJ concluded that the plaintiff's allegations regarding the extent of his pain were not credible and discounted that testimony. After a careful review of the record, the court concludes that the ALJ's reasons for discrediting the plaintiff's testimony were both clearly articulated and supported by substantial evidence.

## V. Conclusion

  The court has carefully and independently reviewed the record and concludes that substantial evidence supports the ALJ's conclusion that plaintiff is not disabled. Thus, the court concludes that the decision of the Commissioner is supported by substantial evidence and is due to be affirmed.

  A separate order will be entered.

  Done this 22nd day of January, 2008.

           /s/Charles S. Coody
          CHARLES S. COODY
          CHIEF UNITED STATES MAGISTRATE JUDGE